**Case No. 23-60037**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

R.J. REYNOLDS VAPOR COMPANY; RJR VAPOR COMPANY, L.L.C.; AVAIL VAPOR TEXAS, L.L.C.; MISSISSIPPI PETROLEUM MARKETERS AND CONVENIENCE STORES ASSOCIATION,

*Petitioners,*

*v.*

FOOD & DRUG ADMINISTRATION; ROBERT CALIFF, *in his official capacity as Commissioner of the United States Food & Drug Administration;* UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, *in his official capacity as Secretary of the United States Department of Health and Human Services,*

*Respondents,*

consolidated with

**No. 23-60128**

R.J. REYNOLDS VAPOR COMPANY; RJR VAPOR COMPANY, L.L.C.; AVAIL VAPOR TEXAS, L.L.C.; MISSISSIPPI PETROLEUM MARKETERS AND CONVENIENCE STORES ASSOCIATION,

*Petitioners,*

*v.*

UNITED STATES FOOD & DRUG ADMINISTRATION; ROBERT M. CALIFF, *Commissioner of Food and Drugs;* UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, *Secretary, U.S. Department of Health and Human Services,*

*Respondents.*

---

On Petition for Review of a Final Marketing Denial Order
by the U.S. Food and Drug Administration

---

## PETITION FOR REHEARING EN BANC OF
## ORDER GRANTING STAY PENDING REVIEW

---

*Of Counsel:*

SAMUEL R. BAGENSTOS
*General Counsel*
*Dep't of Health and Human Services*

MARK RAZA
*Chief Counsel*
WENDY S. VICENTE
*Deputy Chief Counsel for Litigation*
WILLIAM H. RAWSON
*Associate Chief Counsel*
SARAH E. ROSENBERG
*Assistant Chief Counsel*
*Food and Drug Administration*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
  *General*

SARAH E. HARRINGTON
*Deputy Assistant Attorney General*

ALISA B. KLEIN
JOSHUA M. KOPPEL
CATHERINE PADHI
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
(202) 514-1597
Alisa.klein@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required because the Food and Drug Administration is a government agency.  Fifth Cir. R. 28.2.1.

## STATEMENT OF COUNSEL PURSUANT TO
## FEDERAL RULE OF APPELLATE PROCEDURE 35(B)

The stay order at issue here presents the same principal issues that are pending before the en banc Court in *Wages & White Lion Investments, LLC v. FDA*, Nos. 21-60766 & 21-60800 (5th Cir.), in which oral argument is set for May 16, 2023. This Court should rehear the stay order in this case en banc, in conjunction with the en banc proceeding in *Wages*.

Here and in *Wages*, e-cigarette manufacturers seek review of orders issued by the Food and Drug Administration (FDA), pursuant to the Family Smoking Prevention and Tobacco Control Act (TCA), denying their applications to market certain e-cigarette products. Here, the manufacturer, R.J. Reynolds Vapor Company (RJRV), argued that "[i]ssuing a stay is straightforward because this Court already granted one on materially identical facts in *Wages*." Stay Mot. 9. In both cases, the central merits issues are: (1) whether FDA's denial orders announced a new evidentiary standard for granting premarket authorization for e-cigarettes; and (2) whether the manufacturers' proposed marketing restrictions were materially identical to ones that FDA in 2020 found insufficient to prevent youth access and use.

ii

In granting the manufacturers' en banc petition in *Wages*, this Court necessarily determined that the standard for rehearing en banc was met. Furthermore, the stay order at issue here presents an important threshold issue that the en banc Court should consider along with the merits.  Under the TCA's direct-review provision, 21 U.S.C. § 387*l*, the only circuits where RJRV could have petitioned for review of its marketing denial order were the Fourth Circuit (where RJRV is based) or the D.C. Circuit—both of which, as RJRV has acknowledged, have rejected its position on the merits. *See* Brief of *Amicus Curiae* R.J. Reynolds Vapor Company in Support of Petitioners on Rehearing En Banc at 11-14, *Wages & White Lion Invs., LLC v. FDA*, Nos. 21-60766 & 21-60800 (5th Cir. Mar. 6, 2023) (urging this Court to reject the reasoning of *Avail Vapor, LLC v. FDA*, 55 F.4th 409 (4th Cir. 2022), and *Prohibition Juice Co. v. FDA*, 45 F.4th 8 (D.C. Cir. 2022)).

The stay order thus encroached on the exclusive authority of the Fourth Circuit and the D.C. Circuit.  Contrary to the motions panel's premise, a manufacturer cannot circumvent the TCA's direct-review provision by recruiting gas stations, convenience stores, or other local retailers to join its petition for review of its marketing denial order.  The TCA does not give retail outlets a right to challenge a marketing denial

order.  By statute, such entities are not even privy to the reasons for a

marketing denial order, which the TCA requires FDA to treat as

confidential and to provide to the manufacturer alone.  More generally, the

TCA's objectives are "protecting public health" and "preventing young

people from accessing (and becoming addicted to) tobacco products," *Big

Time Vapes, Inc. v. FDA*, 963 F.3d 436, 444 (5th Cir. 2020).  Enhancing the

tobacco-product revenues of local retail outlets forms no part of the Act's

purposes.  Accordingly, the en banc Court should vacate the stay order and

transfer this case to the Fourth Circuit or the D.C. Circuit.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

STATEMENT OF COUNSEL PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 35(B) ................................................. ii

TABLE OF CONTENTS ................................................. v

TABLE OF AUTHORITIES ................................................. vi

STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF FACTS AND PROCEEDINGS ................................................. 1

    A.    Statutory And Regulatory Background ................................................. 1

    B.    FDA's Denial Of RJRV's Application To Market Menthol-Flavored E-Cigarette Products ................................................. 3

    C.    Prior Proceedings ................................................. 5

ARGUMENT ................................................. 6

    A.    The Stay Order Presents The Same Merits Issues That Are Being Considered En Banc In *Wages* ................................................. 6

    B.    The Stay Order Encroached On The Exclusive Authority Of The Fourth Circuit And D.C. Circuit ................................................. 12

CONCLUSION ................................................. 16

CERTIFICATES OF SERVICE AND COMPLIANCE

ADDENDUM: Motions Panel's Stay Order (March 23, 2023)

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Avail Vapor, LLC v. FDA,*
    55 F.4th 409 (4th Cir. 2022) ............................................... 3, 6-7, 7, 9, 10, 11-12

*Big Time Vapes, Inc. v. FDA,*
    963 F.3d 436 (5th Cir. 2020) ............................................................... 15

*Breeze Smoke, LLC v. FDA,*
    18 F.4th 499 (6th Cir. 2021) ...............................................................7

*Brittingham v. Commissioner,*
    451 F.2d 315 (5th Cir. 1971) ...................................................... 15-16

*Dornbusch v. Commissioner,*
    860 F.2d 611 (5th Cir. 1988) ..............................................................15

*Gripum, LLC v. FDA,*
    47 F.4th 553 (7th Cir. 2022) ...............................................................7

*Liquid Labs LLC v. FDA,*
    52 F.4th 533 (3d Cir. 2022) ................................................................7

*Merchants Fast Motor Lines, Inc. v. ICC,*
    5 F.3d 911 (5th Cir. 1993) ............................................................... 15

*Michigan v. EPA,*
    576 U.S. 743 (2015) ........................................................................ 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) .......................................................................... 12

*National Ass'n of Home Builders v. Defenders of Wildlife,*
    551 U.S. 644 (2007) ........................................................................ 12

*Prohibition Juice Co. v. FDA,*
    45 F.4th 8 (D.C. Cir. 2022) ............................................................... 7

*Wages & White Lion Invs., LLC v. FDA,*
    41 F. 4th 427 (5th Cir. 2022) ..............................................................7

**Statutes:**

Family Smoking Prevention and Tobacco Control Act,
   Pub. L. No. 111-31, 123 Stat. 1776 (2009) ........................................2
      § 2(1), 123 Stat. at 1777 ................................................................15
      § 2(4), 123 Stat. at 1777 ..................................................................2
      21 U.S.C. § 387f(c) ...................................................................... 14
      21 U.S.C. § 387j(a)(1)-(2) ............................................................ 1
      21 U.S.C. § 387j(b) ...................................................................... 14
      21 U.S.C. § 387j(b)(1)(A) ............................................................. 7
      21 U.S.C. § 387j(c)(2) .................................................................. 1
      21 U.S.C. § 387j(c)(4) .................................................................. 2
      21 U.S.C. § 387j(d)(2) ................................................................ 14
      21 U.S.C. § 387j(e) ..................................................................... 13
      21 U.S.C. § 387l(a)(1) ................................... 5, 12-13, 13-14, 14

28 U.S.C. § 1631 ..................................................................................15

**Regulations:**

21 C.F.R. § 1114.47(d) ....................................................................... 14

## STATEMENT OF THE ISSUES

(1)    Whether FDA announced a new evidentiary standard for obtaining premarket authorization for e-cigarettes;

(2)    Whether the proposed marketing restrictions at issue here were materially identical to ones that FDA in 2020 found insufficient to prevent youth access and use; and

(3)    Whether an out-of-circuit manufacturer can circumvent the limitations in the Tobacco Control Act's direct-review provision by recruiting local retailers to join its petition for review of its marketing denial order.

## STATEMENT OF FACTS AND PROCEEDINGS

### A.    Statutory And Regulatory Background

The statutory and regulatory background is set out in detail in our *Wages* briefing.  In short, the TCA makes it unlawful to market a new tobacco product without FDA authorization.  21 U.S.C. § 387j(a)(1)-(2).  The Act requires FDA to deny an application for such authorization unless the agency finds that "permitting such tobacco product to be marketed would be appropriate for the protection of the public health."  *Id.* § 387j(c)(2).  In making this determination, FDA must evaluate "the risks and benefits to

the population as a whole, including users and nonusers of the tobacco product," taking into account both the "likelihood that existing users of tobacco products will stop using such products" and the "likelihood that those who do not use tobacco products will start." *Id.* § 387j(c)(4). Because "[v]irtually all new users of tobacco products are under the minimum legal age to purchase such products," TCA, Pub. L. No. 111-31, div. A, § 2(4), 123 Stat. 1776, 1777 (2009), the statute in practice requires FDA to, among other things, weigh the risk that a new tobacco product will be attractive to youth against the product's potential for helping adult smokers completely switch from or significantly reduce their use of combustible cigarettes.

To date, FDA has granted several applications to market tobacco-flavored e-cigarette products, finding that youth interest in those products is low and that adult smokers would benefit from using those products to completely switch from or significantly reduce use of combustible cigarettes.[1] FDA has denied many applications to market e-cigarette products with flavors such as mint, candy, fruit, and dessert, finding that

---

[1] *See, e.g.*, FDA, Technical Project Lead Review for Applications Submitted by R.J. Reynolds Vapor Company 4, 16 (Oct. 12, 2021), https://go.usa.gov/xef5N.

youth interest in those products is high and that the evidence did not show

that those products would provide benefits for adult smokers of

combustible cigarettes beyond the benefits provided by the tobacco-

flavored e-cigarettes.  *See, e.g.*, *Avail Vapor, LLC v. FDA*, 55 F.4th 409 (4th

Cir. 2022) (upholding such a marketing denial order).

FDA separately evaluated applications to market menthol-flavored

e-cigarettes to determine whether any factors unique to menthol would

affect the public health assessment.  *See, e.g.*, Technical Project Lead Review

(TPL) 39, Stay Opp'n Addendum.  As discussed below, FDA denied RJRV's

application to market menthol-flavored e-cigarettes because FDA found

that youth appeal is substantial and that the evidence did not show that

these products would provide benefits for adult smokers of combustible

cigarettes beyond those provided by tobacco-flavored e-cigarettes.

## B.    FDA's Denial Of RJRV's Application To Market Menthol-Flavored E-Cigarette Products

The stay order in this case concerns RJRV's application to market the

menthol-flavored e-cigarette product Vuse Vibe Tank Menthol 3%.  RJRV's

central claim is that this product offers "a potentially less risky alternative

to combustible cigarettes," which are sold by RJRV's corporate affiliates

and other tobacco companies.  Stay Mot. 1; *see also id.* at Certificate 1

(disclosing that RJRV is indirectly owned by Reynolds American, Inc., and

British American Tobacco, p.l.c., which are major manufacturers of

combustible cigarettes).

In denying RJRV's application, FDA found that youth use of

menthol-flavored e-cigarettes is substantial.  TPL 40-43.  Data from the 2022

National Youth Tobacco Survey (an annual nationwide survey conducted

by FDA and the Centers for Disease Control and Prevention) showed that

youth use menthol-flavored e-cigarette products at a similar rate (26.6%) to

products with other flavorings, such as mint (29.4%) and "candy, desserts,

or other sweets" (38.3%).  *See* TPL 40.  Data released in 2022 from the 2020

wave of the longitudinal Population Assessment of Tobacco and Health

study (which is conducted by FDA and the National Institutes of Health)

showed that 53.8% of youth users reported using mint/menthol-flavored

e-cigarettes, as compared to 23.4% for candy/dessert/other sweets.

TPL 40.  More generally, RJRV's Vuse brand "is the second most commonly

reported brand" among middle and high school e-cigarette users.  TPL 42.

FDA found that RJRV's evidence—which FDA discussed in detail—

did not show that its menthol-flavored e-cigarettes would help adult

smokers of combustible cigarettes completely switch from or significantly reduce smoking more effectively than tobacco-flavored e-cigarettes, which offer the same potential health benefits but are less attractive to youth. TPL 45-50.  Accordingly, FDA determined that RJRV failed to establish that marketing these products would be appropriate for the protection of the public health.

### C.   Prior Proceedings

The TCA allows a manufacturer to seek review of FDA's denial of its application to market a new tobacco product in either the D.C. Circuit or the circuit in which the manufacturer has its principal place of business. 21 U.S.C. § 387*l*(a)(1).  RJRV, which is based in the Fourth Circuit, filed a petition for review in this Court and moved for a stay of its marketing denial order.  On March 23, 2023, the motions panel ruled that the petition was properly filed in this Court because RJRV has standing and the petition was joined by the Mississippi Petroleum Marketers and Convenience Stores Association, which is based in Mississippi.  *See R.J. Reynolds Vapor Company v. FDA*, No. 23-60037, at 4-5 & n.5 (5th Cir. March 23, 2023) ("Stay Opinion").  The motions panel entered a stay of RJRV's marketing denial order.

## ARGUMENT

### A.    The Stay Order Presents The Same Merits Issues That Are Being Considered En Banc In *Wages*

In granting the manufacturer's en banc petition in *Wages*, this Court necessarily determined that the standard for rehearing en banc was met. The principal merits issues presented by the RJRV stay order are largely the same.  In seeking a stay, RJRV argued that FDA committed the "same errors" here as in *Wages*.  Stay Mot. 2.  In our en banc briefing in *Wages*, however, we have shown that FDA made no errors in that case, and the same is true here.

**1.**  The motions panel ruled that FDA's denial order announced a new evidentiary standard by requiring manufacturers to compare non-tobacco flavored e-cigarette products to tobacco-flavored e-cigarettes and by requiring manufacturers to show that their products actually help combustible-cigarette smokers completely quit or significantly reduce smoking over time.  Stay Opinion 7-8.  As other courts of appeals have explained, however, there is nothing new about these requirements, which flow directly from the TCA and build on earlier FDA guidance.  *See Avail Vapor, LLC v. FDA*, 55 F.4th 409, 422 (4th Cir. 2022) ("[W]e join the majority

6

of our sister circuits in finding that FDA neither changed the standard nor the types of evidence required.") (citing *Prohibition Juice Co. v. FDA*, 45 F.4th 8, 20–21 (D.C. Cir. 2022); *Liquid Labs LLC v. FDA*, 52 F.4th 533, 539–43 (3d Cir. 2022); *Gripum, LLC v. FDA*, 47 F.4th 553, 559–60 (7th Cir. 2022); *Wages & White Lion Invs., LLC v. FDA*, 41 F. 4th 427, 438-39 (5th Cir. 2022) (panel decision); and *Breeze Smoke, LLC v. FDA*, 18 F.4th 499, 507 (6th Cir. 2021) (denying a stay)).

"The TCA explicitly contemplates that FDA must embark on a comparative inquiry before allowing any marketing of a new tobacco product." *Avail Vapor*, 55 F.4th at 427. As part of its application, "a manufacturer must include 'full reports of all information . . . concerning investigations which have been made to show the health risks of such tobacco product and whether such tobacco product presents *less risk* than other tobacco products.'" *Id*. at 428-29 (quoting 21 U.S.C. § 387j(b)(1)(A)) (court's emphasis). Here, the recent data on which FDA relied showed that youth use menthol-flavored e-cigarettes at a substantial rate that is comparable to the rates for mint, candy, and dessert-flavored e-cigarettes and significantly higher than the rate for tobacco-flavored e-cigarettes. TPL 40-43. FDA thus could not grant RJRV's application without evidence

that its menthol-flavored product would provide an added benefit over tobacco-flavored products that justified the increased risk for youth.

The motions panel expressed doubt that menthol-flavored e-cigarettes are popular with youth, based on an older study suggesting that only 2% of youth users use menthol-flavored e-cigarettes. Stay Opinion 10. But the motions panel apparently overlooked the more recent data discussed in FDA's analysis; those data, which became available in 2022, showed the youth use rate of menthol-flavored e-cigarettes is higher than the motions panel believed. *See supra* pp. 4, 7; TPL 40-43.

The motions panel alternatively suggested that RJRV's evidence showed a sufficient countervailing benefit for adults seeking to quit or significantly reduce smoking combustible cigarettes. Stay Opinion 10. However, the motions panel overlooked FDA's comprehensive explanation for finding otherwise, *see* TPL 40-45. For instance, RJRV submitted studies showing that users of its menthol e-cigarette products were more likely to be former combustible-cigarette smokers than current smokers. TPL 46. But as FDA explained, those studies did "not indicate whether the former smokers used the flavored [e-cigarette] products to quit cigarette smoking or whether they started using the [e-cigarette] products after they quit

8

smoking." *Id.*  The studies thus did not show that RJRV's products had helped the former smokers to quit.  *Id.*

The motions panel misunderstood FDA's statement that RJRV's studies did not "enable reliable evaluation of former smokers' behavior change over time," as is necessary to assess whether a product is likely to promote complete switching or significant cigarette reduction.  TPL 46.  FDA sought "information about long-term *impact*," which does not necessarily require "a long-term *study*."  *Avail Vapor*, 55 F.4th at 423.  The motions panel also suggested that RJRV was confused by a 2020 letter from FDA instructing RJRV to "'provide evidence to demonstrate that the use of these flavored products (*other than menthol*) increases the likelihood of complete switching among adult smokers relative to tobacco or menthol-flavored products.'"  Stay Opinion 3-4 (court's emphasis).  But as the motions panel acknowledged, *id.* at 3, that letter excluded menthol because FDA was not yet addressing RJRV's application to market menthol-flavored e-cigarettes, which FDA had deferred to determine whether considerations unique to menthol warranted a different approach.  In any event, if RJRV was confused it could have asked FDA for clarification.  And

if RJRV now has or later develops additional evidence to support its menthol-flavored products, it is free to submit a new application to FDA.

**2.** The motions panel's ruling that FDA's denial of RJRV's application departed from the marketing plan policy in FDA's 2020 guidance, Stay Opinion 8, rests on a misunderstanding of the 2020 guidance. As the Fourth Circuit explained, the 2020 guidance informed manufacturers that "youth access restrictions and run-of-the-mill marketing plans were inadequate in the fight against the youth vaping epidemic." *Avail Vapor*, 55 F.4th at 426. Although that guidance noted that FDA "'vigorously enforces the age verification requirements in its compliance check program,'" it emphasized that FDA "'believes that age verification alone is not sufficient to address this issue.'" *Id.*

FDA addressed RJRV's marketing plan in detail, *see* TPL 33-37, and found that the company did not propose any "materially different measures from those that FDA has previously considered and found insufficient." TPL 37. Thus, RJRV's argument is even weaker than the objection raised by the petitioner in *Wages*, which argued that FDA did not consider its marketing plan but failed to show any prejudicial error.

**3.** In declaring that FDA has secretly banned all flavored e-cigarettes, Stay Opinion 10-15, the motions panel expressly relied on a theory advanced by the online magazine *Filter*, which is funded by the manufacturers of e-cigarettes and combustible cigarettes.[2] Even a cursory review of FDA's analysis in this case shows that this theory is meritless.

In denying RJRV's application, FDA comprehensively examined the evidence to assess both the risks that menthol-flavored products pose for youth and the potential benefits that RJRV's products offer for adults who smoke combustible cigarettes. That exhaustive review belies any claim that such products were banned. The actual FDA documents embedded in the *Filter* article show that the agency's thinking evolved over time with the benefit of new data about youth use of menthol-flavored e-cigarettes and internal scientific discussion and debate—which is exactly what one would expect from an agency that Congress charged with "the daunting task of

---

[2] *About The Influence Foundation – Filter*, https://filtermag.org/about-the-influence-foundation (disclosing that the magazine's funding sources include RJRV's parent company Reynolds American, Inc., as well as Philip Morris International and Juul Labs, Inc., which is a corporate affiliate of Philip Morris International that manufacturers e-cigarettes).

11

ensuring that another generation of Americans does not become addicted to nicotine and tobacco products." *Avail Vapor*, 55 F.4th at 428.[3]

## B.   The Stay Order Encroached On The Exclusive Authority Of The Fourth Circuit And D.C. Circuit

The en banc Court should rehear RJRV's stay motion together with *Wages* to address an important threshold issue.  When FDA denies a manufacturer's application to market a new tobacco product, the TCA gives the manufacturer a choice of two circuits in which to seek judicial review:  the circuit in which the manufacturer has its principal place of business or the D.C. Circuit.  *See* 21 U.S.C. § 387*l*(a)(1) (providing that a person adversely affected by the promulgation of a regulation establishing,

---

[3] The motions panel criticized FDA for an apparent change of course in FDA's decision-making, noting that, at one time, FDA's Office of Science within the Center for Tobacco Products was considering whether product-specific evidence comparing menthol-flavored e-cigarettes to tobacco-flavored e-cigarettes was needed to show a net benefit.  Stay Opinion 11. The Center's Office of Science is not the final decision maker on applications for premarket authorization in all circumstances; supervisory review and discussions occur within the Center, especially for matters of first impression, such as the first decision on an application to market menthol-flavored e-cigarettes.  In this context, it is not unusual or improper that there was robust internal debate, including diverging initial views. *See, e.g.*, *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *cf. Michigan v. EPA*, 576 U.S. 743, 753 (2015).

amending, or revoking a tobacco product standard or by "a denial of an application under section 387j(c) of this title"—*i.e.*, an application to market a new tobacco product—may within 30 days "file a petition for judicial review of such regulation or denial with the United States Court of Appeals for the District of Columbia or for the circuit in which such person resides or has their principal place of business").

Because RJRV is based in North Carolina, exclusive authority to review the denial of its application lies in the Fourth Circuit or the D.C. Circuit—which rejected RJRV's principal merits arguments in the *Avail Vapor* and *Prohibition Juice* decisions, respectively.  Contrary to the motions panel's premise, Stay Opinion 4 & n.5, a manufacturer cannot circumvent the TCA's direct-review provision by recruiting gas stations or convenience stores to join its petition for review of a marketing denial order.  The TCA does not give local retailers a right to challenge FDA's determination that marketing a new tobacco product would not be appropriate for the protection of the public health.

Under the TCA, only the "applicant"—not gas stations, convenience stores, or other local retailers—is entitled to receive service of the marketing denial order, 21 U.S.C. § 387j(e), and judicial review must be

sought within 30 days, *id.* § 387*l*(a)(1). Thus, Congress did not envision that nonapplicants would petition for judicial review. Although the direct-review provision refers to "any person adversely affected" instead of "any applicant," that is because this provision also provides for judicial review of a regulation—a situation in which there is no "applicant." *Id.*

Further showing that only applicants are entitled to judicial review, the TCA establishes confidentiality protections for a manufacturer's submissions. *See* 21 U.S.C. § 387f(c); *see also id.* 387j(b) (describing information that must be submitted in an application, much of which is proprietary); 21 C.F.R. § 1114.47(d) (providing that information in an application remains protected by disclosure exemptions after a marketing denial order is issued). Indeed, in moving to seal filings in this Court, RJRV emphasized that disclosure "would cause substantial and irreparable harm" to the company. RJRV's Mot. to Seal Pet'rs' Mot. for a Stay 6 (Feb. 1, 2023). Congress further specified that if FDA withdraws or suspends an order granting the marketing of a new tobacco product, only the "holder of an application subject to" the withdrawal or suspension may petition for judicial review, 21 U.S.C. § 387j(d)(2), which confirms Congress's understanding that the manufacturer alone is the adversely affected entity.

14

It is unsurprising that Congress did not give gas stations, convenience stores, or other local retailers a right to challenge an FDA order finding that the marketing of a new tobacco product would not be appropriate for the protection of the public health.  Congress enacted the TCA because it found that youth use of tobacco products "is a pediatric disease of considerable proportions."  Pub. L. No. 111-31, div. A, § 2(1), 123 Stat. 1776, 1777 (2009).  As this Court previously recognized, the TCA's objectives are "protecting public health" and "preventing young people from accessing (and becoming addicted to) tobacco products."  *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 444 (5th Cir. 2020).  Enhancing the tobacco-product revenues of local retail outlets forms no part of the TCA's objectives.

Accordingly, this Court should vacate the stay order and transfer the petition for review to the Fourth Circuit or the D.C. Circuit.  *See Merchants Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 922 (5th Cir. 1993) (ordering an analogous transfer to a circuit with authority to review the challenged agency action) (citing 28 U.S.C. § 1631, and *Dornbusch v. Commissioner*, 860 F.2d 611, 612 (5th Cir. 1988) (per curiam)); *see also Brittingham v. Commissioner*, 451 F.2d 315, 318 (5th Cir. 1971) (emphasizing that "[c]omity

dictates that courts of coordinate jurisdiction not review, enjoin or otherwise interfere with one another's jurisdiction").

## CONCLUSION

In conjunction with the en banc proceedings in *Wages*, the en banc Court should vacate the RJRV stay order and transfer this case to the Fourth Circuit or D.C. Circuit.

Respectfully submitted,

*Of Counsel:*

SAMUEL R. BAGENSTOS
*General Counsel*
*Dep't of Health and Human Services*

MARK RAZA
*Chief Counsel*
WENDY S. VICENTE
*Deputy Chief Counsel for Litigation*
WILLIAM H. RAWSON
*Associate Chief Counsel*
SARAH E. ROSENBERG
*Assistant Chief Counsel*
*Food and Drug Administration*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
 *General*

SARAH E. HARRINGTON
*Deputy Assistant Attorney General*

ALISA B. KLEIN
JOSHUA M. KOPPEL
*/s/ Catherine Padhi*
CATHERINE PADHI
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
(202) 514-1597
Alisa.klein@usdoj.gov

APRIL 2023

16

## CERTIFICATES OF SERVICE AND COMPLIANCE

I hereby certify that on April 7, 2023, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

I further certify that this petition complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3597 words, including the statement of counsel required by Rule 35(b)(1). This petition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Catherine Padhi*

CATHERINE PADHI

# Addendum

Motions Panel's Stay Order (March 23, 2023)

# United States Court of Appeals for the Fifth Circuit

_____

No. 23-60037

_____

R.J. Reynolds Vapor Company; RJR Vapor Company, L.L.C.; Avail Vapor Texas, L.L.C.; Mississippi Petroleum Marketers and Convenience Stores Association,

*Petitioners,*

*versus*

Food & Drug Administration; Robert Califf, *in his official capacity as Commissioner of the United States Food & Drug Administration*; United States Department of Health and Human Services; Xavier Becerra, *in his official capacity as Secretary of the United States Department of Health and Human Services*,

*Respondents,*

CONSOLIDATED WITH
_____

No. 23-60128
_____

R.J. Reynolds Vapor Company; RJR Vapor Company, L.L.C.; Avail Vapor Texas, L.L.C.; Mississippi Petroleum Marketers and Convenience Stores Association,

*Petitioners,*

*versus*

Uᴎɪᴛᴇᴅ Sᴛᴀᴛᴇs  Fᴏᴏᴅ & Dʀᴜɢ Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴏɴ; Rᴏʙᴇʀᴛ M. Cᴀʟɪꜰꜰ, *Commissioner of Food and Drugs*; Uᴎɪᴛᴇᴅ Sᴛᴀᴛᴇs Dᴇᴩᴀʀᴛᴍᴇɴᴛ ᴏꜰ Hᴇᴀʟᴛʜ ᴀɴᴅ Hᴜᴍᴀɴ Sᴇʀᴠɪᴄᴇs; Xᴀᴠɪᴇʀ Bᴇᴄᴇʀʀᴀ, *Secretary, U.S. Department of Health and Human Services*,

*Respondents*.

───────────────────────────────

Appeal from the Food & Drug Administration
Agency Nos. PM0000637, PM0000713,
PM0000554, PM0000561

───────────────────────────────

Before Kɪɴɢ, Jᴏɴᴇs, and Sᴍɪᴛʜ, *Circuit Judges*.

Eᴅɪᴛʜ H. Jᴏɴᴇs, *Circuit Judge*:

The Food and Drug Administration denied petitioners' application to market menthol-flavored e-cigarettes.  Petitioners seek a stay pending review of the denial order on the merits.  We grant the stay.

## I. Bᴀᴄᴋɢʀᴏᴜɴᴅ

This court has become quite familiar with the legal and regulatory framework underpinning this case.  *See Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 437 (5th Cir. 2020); *Wages & White Lion Invs. v. FDA*, 16 F.4th 1130 5th Cir. 2021) (stay order); *Wages & White Lion Invs. v. FDA*, 41 F.4th 427 (5th Cir. 2022) (merits decision), *vacated* 58 F.4th 233 (5th Cir. 2023).  And the material facts resemble those in *Wages & White Lion*, with some notable differences.

The Food and Drug Administration ("FDA") has been regulating tobacco products since 2009 under the Family Smoking Prevention and Tobacco Control Act ("TCA").  Pub. L. No. 111-31, 123 Stat. 1776 (2009) (codified at 21 U.S.C. § 387, *et seq.*).  And since 2016, the FDA has been in

the business of regulating e-cigarettes,[1] including those containing no tobacco flavoring. *See* 81 Fed. Reg. 28,974, 28,976 (May 10, 2016). In order to continue marketing e-cigarettes, manufacturers must submit to the FDA a premarket tobacco product application ("PMTA"). 21 U.S.C. § 387j.

In June 2019, the FDA issued a "how-to" guide for submitting e-cigarette PMTAs. FDA, *Guidance for Industry, Premarket Tobacco Applications for Electronic Nicotine Delivery Systems* (June 2019) ("PMTA Guidance"), https://bit.ly/2R5TyYj. In it, the agency stated that it "does not expect that applicants will need to conduct long-term studies to support an application." *Id.* at 13. The Proposed and Final Rules repeated this expectation. *See* Premarket Tobacco Product Applications and Recordkeeping Requirements, 86 Fed. Reg. 55,300, 55,387 (October 4, 2021); 84 Fed. Reg. 50,566, 50,619 (Sept. 25, 2019). The FDA also recommended that applicants use "products that consumers are most likely to consider[] interchangeable" when submitting "comparative health risk data." PMTA Guidance at 13.

With this guidance in mind, Petitioner R.J. Reynolds Vapor Company ("RJRV") submitted a PMTA for its menthol-flavored Vuse Vibe e-cigarette on March 31, 2020,[2] well ahead of the September 9, 2020, deadline. *See* 21 U.S.C. § 387j; *Wages*, 16 F.4th at 1135. On December 18, 2020, the FDA sent RJRV a deficiency letter regarding several other pending PMTAs for RJRV's flavored ENDS. The FDA instructed RJRV to "provide evidence to demonstrate that the use of these flavored products (*other than menthol*)

---

[1] Known more technically as electronic nicotine delivery systems ("ENDS").

[2] Vuse Vibe is a cartridge-based, closed system e-cigarette, which is distinct from "open system" and disposable e-cigarettes. In contrast, the products at issue in *Wages & White Lion* are flavored liquids used in "open system" e-cigarettes. 41 F.4th at 443 n.1 (Jones, J., dissenting).

increases the likelihood of complete switching among adult smokers relative to tobacco or menthol-flavored products." (emphasis added). Because this advice expressly excluded its menthol-flavored products, RJRV did not supplement its menthol Vuse Vibe PMTA.[3]

Over two years later, on January 24, 2023, the FDA denied RJRV's PMTA in a marketing denial order ("Denial Order"). A stated basis for the denial was that RJRV's long-term studies "were not brand- or product-specific," and, as such, "did not demonstrate that [RJRV's] menthol-flavored new products are more likely to promote complete switching or significant cigarette reduction compared to tobacco-flavored products." Additionally, the FDA stated that the "marketing restrictions and other mitigation measures that [RJRV] proposed cannot mitigate . . . risks to youth sufficiently." RJRV petitioned the FDA for a stay, which was denied. RJRV and three other companies then petitioned this court for review and moved to stay the Denial Order.[4] We granted an administrative stay, and now we enter a full stay pending resolution of RJRV's petition on the merits.

## II. Discussion

As a preliminary matter, venue is proper in this circuit because a petitioner has its "principal place of business" here.[5] 21 U.S.C. § 387l(a)(1)(B). Also, because it is undisputed that "at least one" petitioner—namely, RJRV—has standing, Article III's case-or-controversy

---

[3] RJRV's application for Vuse Vibe already spanned over 150,000 pages.

[4] The FDA also denied a PMTA for menthol Vuse Ciro. Petitioners no longer sell that product, and so do not seek a stay as to the denial of its marketing application.

[5] Petitioner Mississippi Petroleum Marketers and Convenience Stores Association is incorporated in and has its principal place of business in Mississippi.

requirement is satisfied. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439, 137 S. Ct. 1645, 1651 (2017).

The "issuance of a stay is left to the court's discretion." *Nken v. Holder*, 556 U.S. 418, 433, 129 S. Ct. 1749, 1760 (2009). Our judgment is "guided by sound legal principles" that "have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434, 129 S. Ct. at 1761 (internal quotation marks omitted). "The first two factors . . . are the most critical." *Id.*

RJRV has made the strong showing of its likely success on the merits, irreparable injury, and the balance of harms and public interest weigh in favor of granting the stay. Thus, RJRV has met its "burden of showing that the circumstances justify an exercise of [our] discretion." *Id.*

## A. Likelihood of success

The FDA's order is reviewed under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), and will pass muster so long as it is "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). To begin with, this means an "agency must defend its actions based on the reasons it gave when it acted"; we will not let the agency cut corners by entertaining *post hoc* rationalizations. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). Further, when an agency changes course, it must take into account "serious reliance interests" its "longstanding policies may have engendered" along with "alternatives that are within the ambit of the existing policy." *Id.* at 1913 (internal quotation marks omitted and alterations

adopted).[6]  Additionally, failure to consider "relevant factors" will render "an agency's decreed result" unlawful.  *Michigan v. EPA*, 576 U.S. 743, 750, 135 S. Ct. 2699, 2706 (2015).  The above requirements ensure that an agency has engaged in "reasoned decisionmaking."  *Id.*

Specifically, RJRV demonstrates that the FDA failed to reasonably consider the company's legitimate reliance interests concerning the need for longitudinal studies and marketing plans; failed to consider relevant evidence, *inter alia*, that youthful users do not like menthol-flavored e-cigarettes; and has created a *de facto* rule banning all non-tobacco-flavored e-cigarettes without following APA notice and comment requirements.

1. Legitimate reliance interests

The FDA did not reasonably consider RJRV's legitimate reliance interests before changing its position on the types of comparative studies and marketing plans critical to a compliant and complete PMTA.  Dealing with administrative agencies is all too often a complicated and expensive game, and players like RJRV "are entitled to know the rules."  *Alaska Prof'l Hunters Ass'n v. FFA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999), *abrogated on other grounds by Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 135 S. Ct. 1199 (2015).  To keep things fair, agencies must give notice of conduct the agency "prohibits or requires" and cannot "surprise" a party by penalizing it for "good-faith reliance" on the agency's prior positions.  *Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 156–57, 132 S. Ct. 2156, 2167–68 (2012).  At a bare minimum, "[w]hen an agency changes its existing position, it . . . must at least display awareness that it is changing position and show that there are

---

[6] Colloquially, this is known as the "surprise switcheroo" doctrine.  *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019); *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005).

good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 136 S. Ct. 2117, 2125–26 (2016). It follows that "unexplained inconsistency in agency policy is a reason for holding an [action] to be an arbitrary and capricious change from agency practice." *Id.* at 2126 (internal quotation marks omitted).

The FDA inexplicably switched its position on menthol-flavored e-cigarettes in at least two crucial ways. First, before the application deadline, the FDA represented that long-term studies were likely unnecessary and that applicants had discretion to use "products that consumers are most likely to consider[] interchangeable" when submitting "comparative health risk data." PMTA Guidance at 13. The FDA then notified RJRV directly that for its "flavored products (*other than menthol*)," it should submit evidence that those products "increase[d] the likelihood of complete switching among adult smokers relative to tobacco or menthol-flavored products." (emphasis added) The FDA never told RJRV that similar evidence would be required for its menthol Vuse Vibe PMTA. RJRV relied upon these representations when crafting its PMTAs and supplemental filings.

Despite its representations, the FDA's subsequent Denial Order stated that RJRV's "studies were not brand- or product-specific, and thus did not demonstrate that [RJRV's] menthol-flavored new products are more likely to promote complete switching or significant cigarette reduction compared to tobacco-flavored products." In the same vein, the accompanying Technical Project Lead ("TPL") faulted RJRV's studies for failing to "assess the impact of menthol-flavored ENDS . . . on cigarette smoking switching behavior" or "complete switching or significant cigarette reduction *over time*." (emphasis added) And again, nearly parroting FDA's earlier instruction, the TPL stated that RJRV "did not submit evidence from a [randomized controlled trial] or cohort study showing that its menthol-

23-60037
c/w No. 23-60128

flavored ENDS provide an added benefit to adult smokers in terms of complete switching or significant cigarette reduction over tobacco-flavored ENDS." In other words, the FDA's prior representations were that RJRV need not submit long-term studies showing that its menthol-flavored e-cigarette was more likely than a tobacco-flavored e-cigarette to cause smokers to quit. Yet the lack of that evidence became the very basis on which the FDA denied RJRV's application.

The FDA's second unexplained switch was from the policy on marketing plans it announced in its April 2020 Final Guidance ("2020 Guidance").[7] The 2020 Guidance enumerated "adequate measures" manufactures could take "to prevent minors' access" to ENDS products. FDA, *Enforcement Priorities for Electronic Nicotine Delivery Systems (Revised): Guidance for Industry*, 21–22, https://bit.ly/3ZPRkPx. These included: (1) age-verification barriers for retail websites; (2) enforcement monitoring programs with retailers; (3) a limit on the number of ENDS that can be purchased at once or over a period of time; and (4) a mystery shopper program. *Id.* at 22. The guidance also listed common ways manufacturers improperly target minors, such as advertising with "social media influencers," "popular children's characters," and kid-friendly "cartoon or animated characters." *Id.* at 26–27. RJRV's proposed marketing plan accounted specifically for these and many more measures.

The FDA changed positions on this front as well, cursorily stating in its Denial Order that RJRV's "marketing restrictions and other mitigation measures" were insufficient. Remarkably, the TPL recounted the same

---

[7] *See* 85 Fed. Reg. ¶ 23,973 (Apr. 30, 2020). The 2020 Guidance revised an earlier edition, published in January 2020, in which the FDA first described the marketing restrictions manufacturers could implement to restrict youth use. *Enforcement Priorities for Electronic Nicotine Delivery Systems: Guidance for Industry*, 85 Fed. Reg. ¶ 720 (Jan. 7, 2020).

"restrictions on advertising and promotion" and "restrictions on sales access" that the FDA had earlier hailed as "adequate measures," but concluded that none of them actually worked to a sufficient degree. In fact, the only measures described as potentially effective were "age-gating technologies that require user identification by fingerprint or other biometric parameters in order to unlock and use a tobacco product or geo-fencing technologies." These extreme measures were not listed in the 2020 Guidance. The TPL concluded that "only the most stringent mitigation measures could provide sufficient assurance" against the risks to youth from flavored ENDS.

The FDA's Denial Order wholly failed to explain both of these "about face" maneuvers. Of course, the FDA could have *formally* changed its requirements, but it did not. *Regents*, 140 S. Ct. at 1914 ("Making that difficult decision was the agency's job, but the agency failed to do it."). These "unexplained" and "inconsistent" positions are likely arbitrary and capricious. *See Encino Motorcars*, 579 U.S. at 222, 136 S. Ct. at 2126.

The FDA's disregard for the principles of fair notice and consideration of reliance interests is exacerbated by its failure to consider alternatives to denial. When an agency changes course, as the FDA did here, it must take into account "alternatives that are within the ambit of the existing policy." *Regents*, 140 S. Ct. at 1913 (internal quotation marks omitted and alterations adopted). For example, the FDA could have invited RJRV to submit supplemental filings to shore up its menthol Vuse Vibe application, as it had done for RJRV's non-tobacco-flavored e-cigarette PMTAs. Apparently, the FDA accepted as many as 13 amendments for RJRV's other applications. FDA, *TPL Review of PMTA, PM0000491, PM0000492* 11–14 (Dec. 4, 2018), https://tinyurl.com/2p83ymvb. The FDA gave RJRV no such opportunity for its menthol PMTA.

2. Failure to consider relevant factors

The FDA did not adequately address RJRV's evidence that substantial health benefits would accrue to adult and youth cigarette smokers alike who switched to menthol Vuse, while popularity among youth would remain low overall.  For example, RJRV's application contained studies that "switching from smoking to use of menthol Vuse Vibe substantially reduces toxicant exposure in a manner similar to smoking abstinence."  RJRV also submitted evidence of low popularity among youth relative to other flavored ENDS.

This evidence was overlooked even though it comports with the FDA's own findings published at the time RJRV filed its PMTA.  In its 2020 Guidance, in response to the concern over a growing level of youth vaping, the FDA cited evidence that "youth use of menthol-flavored products is not as high as that for mint- and fruit-flavored products," *id.* at 15, and that "youth overwhelmingly prefer certain flavors . . . such as fruit, mint, and candy," *id.* at 24.  Specifically, a survey of 8th, 10th, and 12th graders found that mango, mint, and fruit were the most popular flavors, together accounting for 75% of responses, while menthol and tobacco ranked among the least popular with between 2% and 6% each.  *Id.*  Further, the guidance noted menthol's unique status as "the only characterizing flavor available in cigarettes." *Id.* at 23.

This is where the plot thickens.  Internal memoranda circulated among the FDA's Center for Tobacco Products ("CTP") and CTP's Office of Science ("OS") emerged in December 2022.  *See* Alex Norcia, *Memos Show FDA Overruled Science-Office Call to OK Menthol Vapes*, Filter Magazine (Dec. 14, 2022) ("Norcia"), https://bit.ly/3JjjcVi.  These reveal that OS, well into reviewing a PMTA for a menthol-flavored e-cigarette, recommended in late 2021 that the PMTA be granted because benefits to

smokers likely outweighed the "known risks to youth from the marketing of
the products." Then in July 2022, a new CTP director appeared on the scene
and told OS that "the approach to menthol-flavored ENDS should be the
same as for other flavored ENDS, i.e., the products could be found
[appropriate for the protection of the public health] only if the evidence
showed that the benefits of the menthol-flavored ENDS were greater than
tobacco-flavored ENDS, which pose lower risk to youth." OS then changed
its position. These memoranda are strong evidence that CTP developed and
internally circulated new criteria for evaluating PMTAs for menthol-flavored
ENDS in Summer 2022, long after RJRV had filed its application.

When rejecting RJRV's evidence in the Denial Order, the FDA
brushed over its prior statements about the low popularity of menthol-
flavored e-cigarettes among youth and substantial benefits for cigarette
smokers who make the switch. Because its "new policy rest[ed] upon factual
findings that contradict those which underlay its prior policy," the FDA had
to provide "a more detailed justification." *FCC v. Fox Television Stations,
Inc.*, 556 U.S. 502, 515, 129 S. Ct. 1800, 1811 (2009). It did not do so. This
sudden turnabout further reinforces that the Order is likely arbitrary,
capricious, or otherwise unlawful.

### 3. "Tobacco product standard"

RJRV has adduced evidence that the FDA has effectively banned all
non-tobacco-flavored e-cigarettes, pursuant to its new and secret heightened
evidentiary standard, without affording affected persons any notice or the
opportunity for public comment. There is no dispute that the TCA requires
the FDA to abide by notice-and-comment rulemaking procedures before

establishing a "tobacco product standard."[8]  21 U.S.C. § 387g(c)–(d). Similarly, it is clear that a ban on all but tobacco-flavored e-cigarettes would constitute a "tobacco product standard."  *See id.* § 387g(a)(1)(A); *id.* § 387g(a)(2); *id.* § 387g(a)(3).  The FDA admits that it "has yet to grant" a single application to market non-tobacco-flavored e-cigarettes.  This means it has denied over 355,000 such applications, which amount to 99% of all timely-filed PMTAs.  FDA, Press Release, *FDA Denies Marketing to Two Vuse Menthol E-Cigarette Products* (Jan. 24, 2023), https://bit.ly/3YRYWzB; Jim McDonald, *FDA Denies PMTAs for 300,000 More Flavored E-Liquids*, Vaping 360 (Sept. 3, 2021), https://bit.ly/3Fu08SS. *Cf.* FDA, *Premarket Tobacco Product Marketing Granted Orders* (Feb. 7, 2023), https://bit.ly/3lbNEIV.  The only question, then, is whether the FDA has instituted a *de facto* ban on non-tobacco-flavored e-cigarettes.  If so, then it has violated the APA by failing to provide those regulated with notice or an opportunity for public comment.

The alleged ban stems in part from the "Fatal Flaw" memorandum. It is common knowledge that by Summer 2021, the FDA unexpectedly found itself inundated with millions of PMTAs.  To speed up application processing, the agency circulated an internal memorandum providing a new "standard of evidence" for some PMTAs for flavored e-cigarettes.  The standard should sound familiar: PMTAs now require evidence from a randomized controlled trial or long-term study, along with "strong evidence that the flavored products have an added benefit relative to that of tobacco-flavored ENDS in facilitating smokers completely switching away from or

---

[8] Some argue Congress impermissibly delegated authority to the FDA in violation of the "major questions" doctrine by permitting the agency to determine what constitutes a new "tobacco product."  *See, e.g.*, En Banc Brief for 38 Nat'l and State Elec. Nicotine Delivery Sys. Prod. Advoc. Ass'ns as Amici Curiae Supporting Petitioners, *Wages & White Lion Invs. v. FDA* (No. 21-60766) at 20–24.  We do not consider that argument here.

significantly reducing their smoking."[9]  FDA, *PMTA Review: Evidence to Demonstrate Benefit of Flavored ENDS to Adult Smokers* (Aug. 17, 2021); *see also* Timothy Donahue, *Lawsuits Focus on FDA's 'Fatal Flaw' Review for PMTAs*, Vapor Voice (Nov. 19, 2021), https://bit.ly/3lil0Wt (linking to "fatal flaw" memoranda); Alex Norcia, *FDA Memos Reveals Its "Fatal Flaw" Rejection plan for Flavored Vapes*, Filter (Nov. 3, 2021), https://bit.ly/3mY6T9m.  Every PMTA that did not include the requisite new evidence was denied.  The result: not a single PMTA for non-tobacco-flavored e-cigarettes has been granted.[10]

We thus must consider whether this heightened evidentiary standard may avoid the APA's notice-and-comment requirements because the Fatal Flaw memo and its progeny were general statements of policy rather than substantive rules.  This question "turns on whether an agency intends to bind *itself* to a particular legal position."  *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)).  An action is binding "if it appears on its face to be binding," "is applied by the agency in a way that indicates it is binding," or "retracts an agency's discretion to adopt a different view of the law."  *Id.* at 441–42

---

[9] The dissenting judge in the now-vacated *Wages & White Lion* merits opinion noted that although the Fatal Flaw memo was rescinded at the end of August 2021, "its approach appears to have been followed in a check-box 'scientific review' form that indicated only whether a PMTA included a randomized controlled trial or longitudinal cohort study."  *Wages*, 41 F.4th at 444 (Jones, J. dissenting).  The deficiency letter FDA sent RJRV in 2021 and the internal memoranda between CTP and OS are additional evidence that this standard remained in full effect for all non-tobacco-flavored e-cigarette PMTAs.

[10] It is worth noting that when this standard was expanded to menthol-flavored e-cigarette PMTAs, OS employees expressed their concern to CTP that the standard would "result in the removal of all ENDS from the U.S. market except for tobacco-flavored ENDS."  *See* memo attached in Norcia at 3. n.3 (FDA-LOGICTECHNOLOGY-000171).  They had good foresight.

(internal quotation marks omitted and alteration adopted). Further, a substantive rule "affects the rights of broad classes of unspecified individuals." *City of Arlington v. FCC*, 668 F.3d 229, 242 (5th Cir. 2012); *see also id.* (citing *MacLean v. DHS*, 543 F.3d 1145, 1161 (9th Cir. 2008) (agency action constituting "de facto rulemaking" "may require a notice and comment period")); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 381–85 (D.C. Cir. 2002 (an EPA guidance document was a legislative rule that should have been issued following notice and an opportunity for public comment).

We conclude that the Fatal Flaw memo's heightened evidentiary standard "bears all the hallmarks" of a substantive rule. *City of Arlington*, 668 F.3d at 242. First, the memo is binding on its face by mandating that applications contain "the *necessary* type of studies." Second, it has been applied in a way that indicates it is binding; indeed, the subsequent, myriad Denial Orders refer to the same deficiencies identified as "fatal" in the memo. Third, it took away the FDA reviewers' former discretion to consider individual PMTAs solely on their merits and instead requires a cursory, box-checking review. Finally, it affected the rights of literally hundreds of thousands of applicants whose PMTAs were denied. This is not a close call. *See Iowa League of Cities v. EPA*, 711 F.3d 844, 872–76 (8th Cir. 2013) (vacating two letters sent by the EPA to Senator Charles Grassley as containing new legislative rules without satisfying notice and comment procedures); *Safari Club Int'l v. Zinke*, 878 F.3d 316, 333–34 (D.C. Cir. 2017) (setting aside a press release issued by the U.S. Fish and Wildlife Service for creating an industry ban without going through notice and comment); *Batterton v. Marshall*, 648 F.2d 694, 710 (D.C. Cir. 1980) (holding unlawful a new methodology for collecting and computing unemployment statistics never published or announced by the Department of Labor).

In sum, the FDA has articulated reasons to be concerned about youth vaping. But "[r]egardless of how serious the problem an administrative

agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125, 120 S. Ct. 1291, 1297 (2000) (holding that Congress had not yet empowered the FDA to regulate tobacco products). Here, RJRV is likely to show that the FDA has instituted a *de facto* ban on non-tobacco-flavored e-cigarettes without going through notice-and-comment. Such action would be held unlawful and set aside as promulgated "without observance of procedures required by law." 5 U.S.C. § 706(2)(D).[11]

## B. Irreparable injury

RJRV submits allegations, unchallenged by FDA, that because of the Order, it will incur substantial financial losses in annual revenue as well as reputational harm. It will also have to pay a hefty sum to remove the product from the market and subsequently dispose of it. "[S]ubstantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2015). Further, "complying with a regulation later held invalid almost *always* produces irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433. There is no suggestion, for instance, that RJRV could

---

[11] The Seventh and Eleventh Circuits granted motions to stay FDA Denial Orders for other non-tobacco flavored e-cigarette PMTAs. *See Gripum LLC v. FDA*, No. 21-2840, 2021 WL 8874972 (7th Cir. Nov. 4, 2021); *Bidi Vapor LLC v. FDA*, 47 F.4th 1191 (11th Cir. 2022). The Sixth Circuit has denied a motion to stay. *Breeze Smoke, LLC v. FDA*, 18 F.4th 499 (6th Cir. 2021). And this court granted a motion to stay in *Wages*, 16 F.4th 1130.

Ruling on the merits, court decisions have denied e-cigarette manufacturers' petitions for review. *See Avail Vapor, LLC v. FDA*, 55 F.4th 409 (4th Cir. 2022); *Liquid Labs LLC v. FDA*, 52 F.4th 533 (3d Cir. 2022); *Gripum, LLC v. FDA*, 47 F.4th 553 (7th Cir. 2022); *Prohibition Juice Co. v. FDA*, 45 F.4th 8 (D.C. Cir. 2022). Those decisions are unpersuasive on the facts before us.

overcome the FDA's sovereign immunity to recover costs. *See Wages*, 16 F.4th at 1142. Given RJRV's uncontested allegations and legal arguments, we conclude that it has met its burden of showing irreparable harm if denied a stay pending appeal. "Thus, the two most critical factors favor granting a stay." *Id.* at 1143.

## C. Balance of harms and public interest

"[T]he maintenance of the status quo is an important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016). Here, RJRV's menthol Vuse Vibe has been lawfully sold for almost seven years, three of which the FDA spent reviewing its application. RJRV contends that a "a small delay of this one denial order will not harm FDA." The FDA does not argue otherwise. "Given the great likelihood that [RJRV] will ultimately succeed on the merits," we agree that this factor favors a stay. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020).

It is of highest public importance that federal agencies follow the law. *See Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (per curiam). The FDA argues that we should defer to "Congress's policy choice" "that it is in the public interest to prohibit the marketing of a new tobacco product until FDA finds that it will produce, on balance, a benefit to the public health." This argument is obviously colored by the FDA's view of the merits. "But our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2490. In sum, "there is generally no public interest in the perpetuation of unlawful agency action," *Texas v. Biden*, 10 F.4th at 560. And there is no evidence that "Congress's policy choice" included an exemption from mandatory federal administrative procedures.

23-60037
c/w No. 23-60128

### III. Conclusion

All four factors favor granting a stay pending appeal. RJRV has easily met its burden. For the foregoing reasons, RJRV's motion for a stay pending review of its petition is GRANTED.