# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

───────────────
### Case No. 23-60037
───────────────

R.J. Reynolds Vapor Company; RJR Vapor
Company, L.L.C.; Avail Vapor Texas, L.L.C.;
Mississippi Petroleum Marketers and
Convenience Stores Association,
*Petitioners*

v.

Food & Drug Administration; Robert Califf, in
his official capacity as Commissioner of the
United States Food & Drug Administration;
United States Department of Health and
Human Services; Xavier Becerra, in his official
capacity as Secretary of the United States
Department of Health and Human Services,
*Respondents*

consolidated with
───────────────
### Case No. 23-60128
───────────────

R.J. Reynolds Vapor Company; RJR Vapor
Company, L.L.C.; Avail Vapor Texas, L.L.C.;
Mississippi Petroleum Marketers and
Convenience Stores Association,
*Petitioners*

v.

Food & Drug Administration; Robert Califf, in
his official capacity as Commissioner of the
United States Food & Drug Administration;
United States Department of Health and
Human Services; Xavier Becerra, in his official
capacity as Secretary of the United States
Department of Health and Human Services,
*Respondents*

**Response to Petition for
Rehearing En Banc**

## CERTIFICATE OF INTERESTED PERSONS

**Nos. 23-60037 & 23-60128, R.J. Reynolds Vapor Company, et al. v. Food & Drug Administration, et al.**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Petitioners R.J. Reynolds Vapor Company ("RJRV") and RJR Vapor Company L.L.C. are direct, wholly owned subsidiaries of RAI Innovations Company; RAI Innovations Company is a direct, wholly owned subsidiary of Reynolds American Inc.; and Reynolds American Inc. is an indirect, wholly owned subsidiary of British American Tobacco, p.l.c., a publicly traded company.

2. RAI Innovations Company is a direct, wholly owned subsidiary of Reynolds American Inc.; and Reynolds American Inc. is an indirect, wholly owned subsidiary of British American Tobacco, p.l.c., a publicly traded company.

3. Reynolds American Inc. is an indirect, wholly owned subsidiary (via holding companies) of British American Tobacco, p.l.c., a publicly traded company.

4. British American Tobacco, p.l.c., is a publicly traded company.

5. No publicly traded corporation owns 5% or more of the outstanding shares of British American Tobacco, p.l.c.

6. Petitioner Mississippi Petroleum Marketers and Convenience Stores Association

is a nonprofit, statewide trade association of petroleum marketers and convenience store operators. It is incorporated in Mississippi. It has no parent company and no publicly traded corporation owns stock in the Association. The Association has approximately 200 retail members, some of whom are interested in the outcome of this litigation. *See* 5th Cir. R. 28.2.1 ("If a large group of persons or firms can be specified by a generic description, individual listing is not necessary.").

7.  Petitioner Avail Vapor Texas L.L.C. is a limited liability company formed in Texas. Its parent company is Avail Vapor L.L.C., a Virginia limited liability company.

8.  Avail Vapor L.L.C. is a Virginia limited liability company.

9.  Respondent United States Food & Drug Administration is a federal agency.

10. Respondent Robert Califf, the Commissioner of the United States Food & Drug Administration, has been delegated authority to administer the Tobacco Control Act, including the Act's premarket-review provisions. *See* FDA Staff Manual Guide § 1410.10(1)(A)(1) (Feb. 22, 2023), https://tinyurl.com/2u7edjen.

11. Respondent United States Department of Health and Human Services is a federal agency.

12. Respondent Xavier Becerra, Secretary of the United States Department of Health and Human Services, is the federal official responsible for issuing orders on premarket tobacco product applications. 21 U.S.C. §§ 321(d), 387j(c).

13. The order on review potentially impacts the financial interests of the tobacco industry as a whole, including manufacturers, distributors, retailers, as well as

consumers. Such entities may include, among others, other applicants that filed applications pursuant to 21 U.S.C. § 387j with the FDA.

The parties and their counsel are:

| Petitioners | Counsel |
| --- | --- |
| R.J. Reynolds Vapor Company | Noel J. Francisco<br>Christian G. Vergonis<br>Ryan J. Watson<br>Andrew J. M. Bentz<br>JONES DAY<br>51 Louisiana Ave., NW<br>Washington, DC 20001<br>Tel: 202-879-3939<br>njfrancisco@jonesday.com<br>cvergonis@jonesday.com<br>rwatson@jonesday.com<br>abentz@jonesday.com |
| RJR Vapor Company, L.L.C. | Noel J. Francisco<br>Christian G. Vergonis<br>Ryan J. Watson<br>Andrew J. M. Bentz<br>JONES DAY<br>51 Louisiana Ave., NW<br>Washington, DC 20001<br>Tel: 202-879-3939<br>njfrancisco@jonesday.com<br>cvergonis@jonesday.com<br>rwatson@jonesday.com<br>abentz@jonesday.com |
| Mississippi Petroleum Marketers and Convenience Stores Association | Noel J. Francisco<br>Christian G. Vergonis<br>Ryan J. Watson<br>Andrew J. M. Bentz<br>JONES DAY<br>51 Louisiana Ave., NW |

Washington, DC 20001
Tel: 202-879-3939
njfrancisco@jonesday.com
cvergonis@jonesday.com
rwatson@jonesday.com
abentz@jonesday.com

Avail Vapor Texas L.L.C.

Noel J. Francisco
Christian G. Vergonis
Ryan J. Watson
Andrew J. M. Bentz
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel: 202-879-3939
njfrancisco@jonesday.com
cvergonis@jonesday.com
rwatson@jonesday.com
abentz@jonesday.com

**Respondents**

**Counsel**

United States Food & Drug
Administration

Noah T. Katzen
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Noah.t.katzen@usdoj.gov

Hilary K. Perkins
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Hilary.k.perkins@usdoj.gov

Alisa Beth Klein
U.S. Department of Justice

Civil Division, Appellate Section
Room 7235
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
alisa.klein@usdoj.gov

Joshua Koppel
U.S. Department of Justice
Civil Division, Appellate Section
Room 7212
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
joshua.m.koppel@usdoj.gov

Catherine Meredith Padhi
U.S. Department of Justice
Civil Division, Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
catherine.m.padhi@usdoj.gov

Isaac C. Belfer
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Isaac.C.Belfer@usdoj.gov

Mark Raza
U.S. Food and Drug Administration
Food and Drug Division, OGC
10903 New Hampshire Avenue
White Oak 31
Silver Spring, MD 20993-0002
Mark.Raza@fda.hhs.gov

Wendy S. Vicente
U.S. Food and Drug Administration
Food and Drug Division, OGC
Room 4562

|                                   | 10903 New Hampshire Avenue<br>White Oak 31<br>Silver Spring, MD 20993-0002<br>wendy.vicente@fda.hhs.gov |
|-----------------------------------|---|
| Robert Califf, in his official capacity as Commissioner of the United States Food & Drug Administration | Noah T. Katzen<br>U.S. Department of Justice<br>Civil Division, Consumer Protection Branch<br>450 Fifth Street, NW<br>Washington, DC 20530<br>Noah.t.katzen@usdoj.gov |

Hilary K. Perkins
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Hilary.k.perkins@usdoj.gov

Alisa Beth Klein
U.S. Department of Justice
Civil Division, Appellate Section
Room 7235
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
alisa.klein@usdoj.gov

Joshua Koppel
U.S. Department of Justice
Civil Division, Appellate Section
Room 7212
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
joshua.m.koppel@usdoj.gov

Catherine Meredith Padhi
U.S. Department of Justice
Civil Division, Appellate Section
950 Pennsylvania Avenue, N.W.

Washington, DC 20530
catherine.m.padhi@usdoj.gov

Isaac C. Belfer
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Isaac.C.Belfer@usdoj.gov

Mark Raza
U.S. Food and Drug Administration
Food and Drug Division, OGC
10903 New Hampshire Avenue
White Oak 31
Silver Spring, MD 20993-0002
Mark.Raza@fda.hhs.gov

Wendy S. Vicente
U.S. Food and Drug Administration
Food and Drug Division, OGC
Room 4562
10903 New Hampshire Avenue
White Oak 31
Silver Spring, MD 20993-0002
wendy.vicente@fda.hhs.gov

United States Department of
Health and Human Services

Noah T. Katzen
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Noah.t.katzen@usdoj.gov

Hilary K. Perkins
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW

Washington, DC 20530
Hilary.k.perkins@usdoj.gov

Alisa Beth Klein
U.S. Department of Justice
Civil Division, Appellate Section
Room 7235
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
alisa.klein@usdoj.gov

Joshua Koppel
U.S. Department of Justice
Civil Division, Appellate Section
Room 7212
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
joshua.m.koppel@usdoj.gov

Catherine Meredith Padhi
U.S. Department of Justice
Civil Division, Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
catherine.m.padhi@usdoj.gov

Isaac C. Belfer
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Isaac.C.Belfer@usdoj.gov

Xavier Becerra, in his official
capacity as Secretary of the
United States Department of
Health and Human Services

Noah T. Katzen
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Noah.t.katzen@usdoj.gov

Hilary K. Perkins
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Hilary.k.perkins@usdoj.gov

Alisa Beth Klein
U.S. Department of Justice
Civil Division, Appellate Section
Room 7235
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
alisa.klein@usdoj.gov

Joshua Koppel
U.S. Department of Justice
Civil Division, Appellate Section
Room 7212
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
joshua.m.koppel@usdoj.gov

Catherine Meredith Padhi
U.S. Department of Justice
Civil Division, Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
catherine.m.padhi@usdoj.gov

Isaac C. Belfer
U.S. Department of Justice
Civil Division, Consumer
Protection Branch
450 Fifth Street, NW
Washington, DC 20530
Isaac.C.Belfer@usdoj.gov

| *Amici Curiae* in Support of Petitioners | Counsel |
|---|---|
| American Vaping Association, Inc.; American Vapor Manufacturers Association, Inc.; Arizona Smoke Free Business Alliance, Inc.; Breathe Easy Alliance of Alabama, Inc.; Connecticut Chapter of the Smoke Free Alternatives Trade Association; Consumer Advocates for Smoke-Free Alternatives Association, Inc.; Florida Smoke Free Association, Inc.; Georgia Smoke Free Association, Inc.; Hawaii Chapter of Smoke Free Alternatives Trade Association; Kansas Smoke Free Association; Kentucky Vaping Retailers Association, Inc. d/b/a Kentucky Smoke Free Association; Indiana Smoke Free Alliance, Inc.; Iowans for Alternatives to Smoke and Tobacco, Inc.; Iowa Vape Association, Inc.; Louisiana Vaping Association, Inc.; Maryland Vapor Alliance; Michigan Vape Shop Owners, Inc.; Midwest Vape Coalition, Inc.; Minnesota Smoke Free Alliance; Missouri Smoke Free, Inc.; Montana Smoke Free Association, Inc.; Nebraska Vape Vendors Association, Inc.; Nevada Vaping Association, Inc.; New Mexico Smoke Free Alliance, Inc.; New York State Vapor Association, | J. Gregory Troutman Troutman Law Office, PLLC 4205 Springhurst Blvd, Ste. 201 Louisville, KY 40241 jgtatty@yahoo.com |

Inc.; North Carolina Vaping
Council, Inc.; Ohio Vapor
Trade Association, Inc.; Rocky
Mountain Smoke Free
Association, Inc.; Rhode Island
Chapter of Smoke Free
Alternatives Trade
Association; Smoke Free
Alternatives Coalition of
Illinois, Inc.; Smoke-Free
Alternatives Trade Association,
Inc.; South Carolina Vapor
Association, Inc.; Texas
Chapter of Smoke Free
Alternatives Trade Association;
Tennessee Smoke Free
Association, Inc.; Virginia
Smoke Free Association, Inc.;
Washington Smoke Free
Association, Inc.; West Virginia
Smoke Free Association, Inc.;
United Vapers Alliance, Inc.

**_Amici Curiae_ in Support of
Respondents**

Action on Smoking and Health;
African American Tobacco
Control Leadership Council;
American Academy of Family
Physicians; American Academy
of Pediatrics; American Cancer
Society Cancer Action
Network; American Heart
Association; American Lung
Association; American Medical
Association; Campaign for
Tobacco-Free Kids; Louisiana
State Medical Society; Parents
Against Vaping e-cigarettes;
Truth Initiative

Scott P. Lewis
50 Milk Street
Boston, MA 02109
slewis@andersonkreiger.com

Dated: April 27, 2023

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
*Counsel of Record for Petitioners*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................ii

INTRODUCTION ..............................................................................1

BACKGROUND.................................................................................2

REASONS TO DENY THE PETITION...........................................................3

    A.   The Full Court Does Not Review Interim Matters...........................................3

    B.   *RJRV* Presents Distinct Issues from *Wages* ..........................................4

    C.   FDA Does Not Identify Independent Issues in *RJRV* that Were Preserved and Warrant Interim En Banc Consideration ......................6

    D.   FDA's (Irrelevant) Merits Arguments Are Wrong............................................7

    E.   Venue Is Proper ......................................................................9

    F.   Taking *RJRV* En Banc Would Create Procedural Problems .......................14

    G.   If the Court Grants Rehearing, It Should Leave the Stay in Place and Order but Defer Briefing...................................................15

CONCLUSION ..............................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bank of Am. Corp. v. City of Miami,*
  137 S. Ct. 1296 (2017) ........................................................................ 10, 11, 14

*Calumet Indus., Inc. v. Brock,*
  807 F.2d 225 (D.C. Cir. 1986) ......................................................................... 10

*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388 (1987) ........................................................................................ 11

*Exxon Corp. v. FTC,*
  588 F.2d 895 (3d Cir. 1978) ........................................................................... 14

*Franks Inv. Co. LLC v. Union Pac. R.R.,*
  593 F.3d 404 (5th Cir. 2010) (en banc) ........................................................ 6, 7

*Horihan v. Hartford Ins. Co. of the Midwest,*
  979 F. Supp. 1073 (E.D. Tex. 1997) ............................................................... 14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchack,*
  567 U.S. 209 (2012) ........................................................................................ 10

*R.J. Reynolds Vapor Co. v. FDA,*
  No. 23-60037 (5th Cir. Mar. 23, 2023) .................................................... *passim*

*Reifer v. Westport Ins. Corp.,*
  751 F.3d 129 (3d Cir. 2014) ........................................................................... 14

*Russello v. United States,*
  464 U.S. 16 (1983) .......................................................................................... 13

*Texas v. United States,*
  No. 21-40618 (5th Cir. Nov. 30, 2021) ............................................................ 4

*Thomas v. Bryant,*
  919 F.3d 298 (5th Cir. 2019) ............................................................................ 4

*United States v. Gonzales,*
  520 U.S. 1 (1997) ............................................................................................ 11

*Wages & White Lion Invs., L.L.C. v. FDA,*
  16 F.4th 1130 (2021) ......................................................................................... 3

*Wages & White Lion Invs., L.L.C. v. FDA,*
  41 F.4th 427 (2022) ........................................................................................... 3

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Wages & White Lion Invs., L.L.C. v. FDA,*
  58 F.4th 233 (2023) ................................................................................. 3

**STATUTES AND RULES**

Food, Drug, and Cosmetic Act (FDCA)

  FDCA § 301, 21 U.S.C. § 331 ............................................................... 11

  FDCA § 304, 21 U.S.C. § 334 ............................................................... 11

  FDCA § 900, 21 U.S.C. § 387 ............................................................... 12

  FDCA § 902, 21 U.S.C. § 387b ............................................................. 11

  FDCA § 903, 21 U.S.C. § 387c .............................................................. 11

  FDCA § 906, 21 U.S.C. § 387f ........................................................ 12, 13

  FDCA § 907, 21 U.S.C. § 387g .............................................................. 12

  FDCA § 910, 21 U.S.C. § 387j ............................................................... 13

  FDCA § 912, 21 U.S.C. § 387*l* ....................................................... 6, 9, 11

Tobacco Control Act, 123 Stat. 1776 (2009) ........................................... 12

5th Cir. R. 35.6 ......................................................................................... 15

5th Cir. R. 41.3 ......................................................................................... 15

**REGULATORY MATERIALS**

FDA, *Compliance Check Inspections of Tobacco Product Retailers* ............... 12

FDA, *FDA Denies Marketing of Two Vuse Menthol E-Cigarette Products*
  (Jan. 24, 2023) ....................................................................................... 12

FDA, *FDA Issues Marketing Denial Orders to Fontem US for myblu Products*
  (Apr. 8, 2022) ........................................................................................... 9

FDA, *FDA Warns Manufacturers and Retailers* (Apr. 27, 2020) .................. 12

**OTHER AUTHORITIES**

5th Cir. Practitioner's Guide (Oct. 2022) ............................................... 1, 3

Maria Cooper, et al., *Notes from the Field: E-cigarettes Use Among
  Middle and High School Students—United States, 2022,*
  71 Morbidity & Mortality Wkly. Rep. 1283 (2022) .................................. 8

Jim McDonald, *FDA Denies PMTAs for 300,000 More Flavored E-Liquids,*
  Vaping360 (Sept. 3, 2021) ........................................................................ 9

# INTRODUCTION

In an unprecedented request, FDA not only asks the full Court to rehear an interim panel order, but also to rehear it alongside a case pending en banc on the merits and set for argument in just three weeks.[1] For numerous reasons, this Court should deny FDA's request.[2]

*First*, as this Court's Practitioner's Guide states, "interim matters—e.g., injunctions pending appeal...—are not subject to en banc consideration." 5th Cir. Practitioner's Guide 44 (Oct. 2022). Yet that is precisely what FDA seeks.

*Second*, this case, *R.J. Reynolds Vapor Co. v. FDA*, No. 23-60037 ("*RJRV*"), is not the same as *Wages & White Lion Investments, L.L.C. v. FDA*, No. 21-60800 (5th Cir. filed Oct. 15, 2021). While some issues overlap—and any win for petitioners in *Wages* will mean that the *RJRV* Petitioners prevail on the merits—*RJRV* involves additional merits issues and a "threshold issue" (Pet. 12-16) not present in *Wages*.

*Third*, FDA has not identified any distinct issues in *RJRV* that are both preserved and warrant en banc consideration now. Indeed, the only distinct issue FDA addresses

---

[1] Respondents are referred to as "FDA."

[2] FDA seeks rehearing of only one of the two stay orders in these consolidated cases, the one for Vibe. FDA's petition repeatedly refers to "the order" (singular), and clarifies (at 3) that the order "concerns...Vibe." FDA did not oppose the stay motion for Solo. *See* Mot. 1, *R.J. Reynolds Vapor Co. v. FDA*, No. 23-60128 (5th Cir. Mar. 24, 2023).

is a venue argument that FDA forfeited by not raising it before the stay panel and that would not warrant en banc review now.

*Fourth*, the stay panel was right. There is no need for the full Court to take a second look. FDA clearly wants out of the Fifth Circuit at all costs. But venue is proper here because the retailer Petitioners, who are located in this circuit, are undeniably "adversely affected" by FDA's order.

*Finally*, if the Court were to order rehearing en banc, the unique issues in this case would warrant supplemental briefing and oral argument. But *Wages* will be argued in three weeks, which hardly provides sufficient time for the parties here to prepare and submit briefing before argument. It would be unfair to so accelerate *RJRV*, particularly since FDA presents no persuasive basis for that extraordinary request.

The Court should therefore deny FDA's petition. If the Court nonetheless grants the petition, it should (i) make clear that the existing stay continues, (ii) order supplemental briefing and hold oral argument, and (iii) defer briefing and argument pending the *Wages* decision.

## BACKGROUND

This Court is "quite familiar with the legal and regulatory framework underpinning" this case. Stay Order 2, *RJRV*, No. 23-60037 (5th Cir. Mar. 23, 2023), Dkt. 121 ("*RJRV*"). In short, FDA has been denying every application to market non-tobacco flavored e-cigarettes, flouting administrative law and cutting procedural corners.

The first challenge in this Court to a denial order was *Wages*. This Court stayed the denial order. 16 F.4th 1130, 1134 (2021). After a divided merits panel denied the petition for judicial review, 41 F.4th 427 (2022), the Court ordered that the case be reheard en banc, 58 F.4th 233 (2023). The full Court will hear argument May 16.

While *Wages* has been pending en banc, FDA issued a denial order to RJRV for its menthol Vuse Vibe and Ciro products. Petitioners challenged that order in this Court. This Court stayed the denial order as to RJRV's currently marketed menthol Vibe products pending resolution of the merits.

In a unanimous, 16-page opinion, the panel held that Petitioners are likely to succeed on their claims. In particular, FDA arbitrarily ignored RJRV's reliance interests, marketing plan, less-disruptive alternatives, and evidence. *RJRV* 6-14. Further, the panel agreed that FDA unlawfully created a tobacco product standard, effectively banning all non-tobacco-flavored e-cigarettes without undertaking required notice-and-comment procedures. *RJRV* 14-15. It was "not a close call." *RJRV* 14. The panel also concluded that all the non-merits factors favor a stay, and that venue is proper. *RJRV* 4-5, 15-17.

## REASONS TO DENY THE PETITION

The full Court should not rehear the stay order.

### A.     The Full Court Does Not Review Interim Matters

This Court's Practitioner's Guide admonishes, "[I]nterim matters—e.g., injunctions pending appeal…—are not subject to en banc consideration." Practitioner's

Guide 44; *see also Thomas v. Bryant*, 919 F.3d 298, 325 (5th Cir. 2019) (Clement, J., dissenting in part) ("this court's usual procedures do not appear to permit en banc review of this denial of a stay"). Presumably this is why FDA has not sought en banc review of stays in other cases challenging e-cigarette denials, including *Wages*.

Yet that is precisely what FDA requests here: en banc review of an interim stay order pending merits review. Accepting that request would invite en banc petitions for every interim decision—from consolidation orders to extensions of time. And as to stay and injunction orders, en banc reconsideration could raise knotty issues. Could a merits panel hold that a plaintiff was, in fact, right on the merits, when a majority of the full Court concluded that the plaintiff was unlikely to prevail on the merits? There is no reason to open Pandora's Box.[3]

## B.    *RJRV* Presents Distinct Issues from *Wages*

*RJRV* also presents different issues than *Wages*. True, numerous issues overlap, and what this Court says in *Wages* will affect *RJRV*. But *RJRV* presents both distinct merits and threshold issues.

---

[3] This Court granted rehearing en banc of a stay order in *Texas v. United States*, No. 21-40618 (Nov. 30, 2021). But that case involved sweeping immigration issues implicating the liberty interests of thousands, and was moving through this Court on an urgent basis. This case, in contrast, involves an e-cigarette that has been on the market for years and therefore provides no basis for creating an exception to the Court's ordinary practices.

For example, the *RJRV* Petitioners argue that FDA has unlawfully created a tobacco product standard. *E.g.*, *RJRV* 14-15. Neither *Wages* panel addressed that issue.

The *RJRV* Petitioners argue that FDA's deficiency letters specifically lulled RJRV into believing no further studies or information on menthol e-cigarettes were necessary. *E.g.*, *RJRV* 3, 7-8. That is not at issue in *Wages*.

*RJRV* involves menthol e-cigarettes, which present a specific benefit to adult smokers of menthol cigarettes—the only flavored cigarettes on the market. That is also not at issue in *Wages*.

Relatedly, while *Wages* and *RJRV* both concern whether FDA overlooked key evidence, the type of evidence differs significantly. RJRV's applications contain studies that were not in Wages' applications. For example, an RJRV study showed that more current cigarette smokers were projected to use menthol Vuse products than tobacco-flavored Vuse products, demonstrating the very thing FDA claims it wanted to see. *E.g.*, *RJRV* Stay Mot. 17.

If all that were not enough, FDA itself contends there is a threshold issue unique to *RJRV*. FDA argues that only the applicant—here, RJRV—can challenge FDA's denial. Pet. 12-13. That is wrong. *Infra* Part E. But the point here is that FDA is trying to foist new issues on the *Wages* en banc Court—issues no merits panel has considered.

Finally, *RJRV* concerns whether Petitioners are entitled to a stay, which involves non-merits factors, something FDA's petition entirely ignores. If the Court rehears *RJRV*, the Court would have to add those issues on top of everything else.

### C.     FDA Does Not Identify Independent Issues in *RJRV* that Were Preserved and Warrant Interim En Banc Consideration

None of those independent issues in *RJRV* warrant en banc consideration at this pre-merits juncture. Although FDA argues that the stay panel got some of those issues wrong, it does not explain why the issues necessitate en banc review. Further, there is no intra- (or inter-) circuit conflict on those issues because the stay panel is the only one to have addressed them.

Additionally, FDA forfeited its venue argument by failing to present it to the stay panel. *See Franks Inv. Co. LLC v. Union Pac. R.R.*, 593 F.3d 404, 409 (5th Cir. 2010) (en banc). To be sure, the stay panel held that venue is proper. *RJRV* 4-5 & n.5. But it did not consider the particular argument FDA now raises because FDA did not make it.

In its opposition to the stay motion, FDA contended that it was "unclear" whether this Court could review the petition under 21 U.S.C. § 387*l*(a) because the retailer petitioners in this Circuit "have not sufficiently alleged standing." *RJRV* Stay Opp'n 9-10. FDA explained that this was so because (in its view) the retailer petitioners had not alleged any cognizable "injuries." *E.g., id.* ("these petitioners' claimed injuries are premised on speculation"); *id.* ("any injury…is self-inflicted"). The panel found that argument irrelevant because RJRV clearly had standing, and only one petitioner needs standing. *RJRV* 4-5.

In its petition, FDA devotes nearly half of its argument section to a very different contention. FDA now says that no retailer—even one suffering cognizable injury—can

ever challenge a denial because only applicants can seek judicial review. This argument is wrong, *infra* Part E, and it was nowhere in FDA's stay opposition. FDA has already flipped the script on manufacturers across the country; it should not be allowed to do so again in this Court. *Franks Inv.*, 593 F.3d at 409 (argument raised "[f]or the first time before the en banc court" is "too late" and "waived").

### D.    FDA's (Irrelevant) Merits Arguments Are Wrong

FDA's merits arguments are irrelevant to the decision whether to grant rehearing and also wrong.

**1.** FDA (at 6-7) argues that it did not change the evidentiary requirement for manufacturers. But as the stay panel explained, FDA specifically told manufacturers that long-term studies were likely unnecessary and then denied RJRV's applications for not containing those studies. *RJRV* 7. Indeed, when FDA requested more evidence on RJRV's non-tobacco and non-menthol e-cigarettes, FDA excluded menthol. *Id.* FDA claims (at 9) that the agency's letter "excluded menthol because FDA was not yet addressing RJRV's application to market menthol-flavored e-cigarettes." That is not true. FDA's letter specifically addressed the menthol applications and asked for certain information related to menthol Vuse products, such as information on shelf stability. *E.g.*, RJR-FDA-003316-24.

There is no merit to FDA's claim (at 7) that "youth use menthol-flavored e-cigarettes at a substantial rate that is comparable to the rates for mint, candy, and dessert-flavored e-cigarettes." FDA's own data proves the opposite. The 2022 National

Youth Tobacco Survey shows that youth use flavors such as candy, dessert, and sweets almost 44% *more* than they use menthol-flavored products.[4]

Moreover, RJRV already demonstrated the long-term impact FDA now wants. Studies in RJRV's applications showed that more current cigarette smokers were projected to use menthol Vuse products than tobacco-flavored ones and that more non-tobacco-flavored Vuse users were former smokers as opposed to current smokers. *See, e.g.*, *RJRV* 10 (discussing overlooked evidence).

**2.** FDA misleadingly states (at 10) that its "2020 guidance informed manufacturers that 'youth access restrictions and run-of-the-mill marketing plans were inadequate in the fight against the youth vaping epidemic.'" But that guidance *exempted* menthol. Moreover, RJRV followed exactly what FDA said were "'adequate measures'…'to prevent minors' access' to [e-cigarettes]." *RJRV* 8. FDA has changed its position without adequate explanation or justification, as the stay panel recognized. *RJRV* 8-9.

**3.** FDA offers no real response to the stay panel's conclusion that FDA unlawfully created a tobacco product standard. That an online magazine also advanced this theory (Pet. 11) does not undermine the fact that FDA adopted a policy of denying all non-tobacco-flavored e-cigarettes. The relevant FDA memos are in the record. And

---

[4] Maria Cooper, et al., *Notes from the Field: E-cigarettes Use Among Middle and High School Students—United States, 2022*, 71 Morbidity & Mortality Wkly. Rep. 1283 (2022), https://tinyurl.com/44fk6y8p.

the *RJRV* Petitioners squarely presented this claim. *RJRV* Stay Mot. 19-23. FDA has decided more than 99% of applications submitted by September 2020.[5] Every one of the 355,000+ decisions for non-tobacco-flavored e-cigarettes has been a denial.[6] FDA has plainly adopted a tobacco product standard: no flavors in e-cigarettes except tobacco. As the stay panel concluded, this is "not a close call." *RJRV* 14.

### E.    Venue Is Proper

Venue is proper here. The Tobacco Control Act ("TCA") provides that "any person adversely affected" by a denial order may "file a petition for judicial review" in the appropriate court of appeals. 21 U.S.C. § 387*l*(a)(1). Retailers (including retailer petitioners here) who sell or wish to sell the product subject to a denial order are "adversely affected" and therefore squarely within the provision's scope.

FDA does not dispute that the retailer petitioners are injured by FDA's denial order. Instead, it argues that retailers can never invoke the TCA's judicial-review provision because only the applicant (i.e., manufacturer) can. That flouts both the TCA's text and the permissive standards for assessing whether a party invoking a judicial-review provision falls within the statute's so-called zone of interests.

---

[5] *See* FDA, *FDA Issues Marketing Denial Orders to Fontem US for myblu Products* (Apr. 8, 2022), https://bit.ly/3OlQ29r.

[6] Jim McDonald, *FDA Denies PMTAs for 300,000 More Flavored E-Liquids*, Vaping360 (Sept. 3, 2021), https://tinyurl.com/53w2szcw.

A party may invoke a judicial-review provision if the party is asserting an interest that arguably falls within zone of interests protected or regulated by the statute. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchack*, 567 U.S. 209, 224 (2012). The test "is not meant to be especially demanding." *Id.* at 225. It "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* All that is required is "[s]ome indicia—however slight—that the litigant before the court was intended to be protected…or regulated by the statute"— either suffices. *Calumet Indus., Inc. v. Brock*, 807 F.2d 225, 228 (D.C. Cir. 1986). This is assessed using "traditional tools of statutory interpretation." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017). And "the benefit of any doubt goes to the plaintiff." *Match-E-Be-Nash-She-Wish*, 567 U.S. at 225. "[F]inancial injury…satisf[ies] the 'cause-of-action' (or 'prudential standing') requirement." *Bank of Am.*, 137 S. Ct. at 1303.

*Bank of America*—which involved similar language about who can sue—controls. There, Miami sued banks under the Fair Housing Act, alleging banks engaged in discriminatory lending that caused the city economic harm. In concluding that the city came within the FHA's zone of interests, the Supreme Court stressed the breadth of the FHA's judicial-review provision: "The FHA permits any 'aggrieved person' to bring a housing-discrimination lawsuit." *Id.* Because the city claimed that it lost tax revenue due to the banks' practices, the Court easily concluded the city was at least

"arguably…within the FHA's zone of interests"—even though the city was not the victim of discrimination. *Id.* at 1304-05.

The same analysis applies here. The TCA allows "*any person* adversely affected" by a denial order to sue. 21 U.S.C. § 387*l* (emphasis added). That phrase closely resembles the "aggrieved person" language in *Bank of America.* Moreover, "the word 'any' has an expansive meaning." *United States v. Gonzales*, 520 U.S. 1, 5 (1997). That capacious language thus reflects Congress's intent to protect a broad range of petitioners. *Bank of Am.*, 137 S. Ct. at 1303. And the direct financial harms to retailers easily bring them within the statute's zone of interests. *Id.*

Even setting aside the broad language of the judicial-review provision, the TCA teems with provisions demonstrating that it both regulates and protects retailers. When determining whether a plaintiff is regulated or protected, courts look at "the overall context" and "overall purposes" of the statute, not just the judicial-review provision. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 401 (1987).

*First*, the TCA directly regulates retailers. It prohibits retailers from selling products that FDA refuses to authorize. 21 U.S.C. §§ 331, 387b(6). FDA can seize those products from retailers. § 334(a), (g). Thus, the denial of authorization directly regulates which products a retailer may sell. *See also* § 387c; § 334(a)(2)(E), (g). And FDA has not been shy about enforcing the TCA against retailers. In announcing its denial order,

FDA said it "intends to ensure compliance by…retailers."[7] Moreover, in 2020, FDA warned retailers it would enforce the TCA against them.[8] FDA has made good on that warning, issuing warning letters and civil penalties to retailers.[9] FDA has even sought injunctions. *E.g.*, *United States v. Lucky's Convenience & Tobacco, LLC*, No. 22-cv-1237 (D. Kan. 2022).

*Second*, the TCA protects retailers. The TCA permits FDA to regulate retailers, but *only* if the regulation furthers public health. 21 U.S.C. § 387f. The Act protects retailers' ability to sell tobacco products by forbidding FDA from banning all cigarettes and certain other product categories. § 387g(d)(3). FDA's regulation of retailers also cannot prohibit "the sale of any tobacco product in face-to-face transactions by a specific category of retail outlets." § 387f(d)(3)(A)(i). And a purpose of the Act is "to continue to permit the sale of tobacco products to adults." TCA § 3(7), 123 Stat. 1776, 1782 (2009) (codified at 21 U.S.C. § 387 note). Accordingly, the TCA was intended to protect retailers; they therefore satisfy the zone-of-interests test for this reason too.

---

[7] *E.g.*, FDA, *FDA Denies Marketing of Two Vuse Menthol E-Cigarette Products* (Jan. 24, 2023), https://tinyurl.com/4ck9644b.

[8] FDA, *FDA Warns Manufacturers and Retailers* (Apr. 27, 2020), https://tinyurl.com/uttfu7p7.

[9] FDA, *Compliance Check Inspections of Tobacco Product Retailers*, https://tinyurl.com/4994vdkf. A toggle reveals many enforcement actions against retailers.

FDA's counterarguments fail. FDA concedes (at 14) that "the direct-review provision [at issue here] refers to 'any person adversely affected' instead of 'any applicant,'" but points out a *different* TCA provision that says that only the "'holder of an application'" can challenge the withdrawal or suspension of orders *granting* marketing authorization. *See* 21 U.S.C. § 387j(d)(2). This, FDA says (at 14), "confirms Congress's understanding that the manufacturer alone is the adversely affected entity." That is backwards. The fact that another *inapplicable* provision explicitly refers to the "holder of an application" shows that Congress knew how to limit the universe of potential challengers to applicants. *See Russello v. United States*, 464 U.S. 16, 23 (1983). And when it came to judicial review of marketing *denial* orders, Congress did not do so but, instead, allowed "*any person* adversely affected" by a denial order to sue.

FDA also states that only the applicant is entitled to service of the denial order and that applications enjoy confidentiality protections. Pet. 13-14 (citing §§ 387f(c), 387j(e)). But these administrative provisions, which are not in the relevant section, do not change who is "adversely affected." Moreover, FDA publicly announces denial orders, as it did with Vibe. A retailer who wished to challenge that order could obtain the underlying order during the course of judicial review or through a FOIA request if need be. And the fact that the *applications* can contain confidential information, does not mean the retailers cannot bring claims based on the denial orders themselves, or obtain the applications with necessary redactions as part of the administrative record.

FDA contends that Congress must have used "'any person adversely affected'" because the provision "also provides for judicial review of a regulation." Pet. 14. That speculation hardly licenses the Court to rewrite the provision. Again, had Congress wanted to limit those who could challenge denial orders to "applicants," Congress would have said so.

Accordingly, "any person adversely affected" by a denial means what it says. And retailers who sell or wish to sell the products at issue *easily* come within the TCA's broad zone of interests. At a minimum, they "arguably" fall within this zone, which is all that is required. *Bank of Am.*, 137 S. Ct. at 1304-05.

Finally, even if the Court were to conclude that retailer co-petitioners cannot invoke the TCA's judicial-review provision, venue would nonetheless be proper. Venue is not lost by the subsequent dismissal of a party whose presence was necessary to establish venue. *See, e.g.*, *Exxon Corp. v. FTC*, 588 F.2d 895, 899 (3d Cir. 1978), *overruled on other grounds*, *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 138 (3d Cir. 2014); *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997).

### F.　Taking *RJRV* En Banc Would Create Procedural Problems

There are also practical reasons not to take *RJRV* en banc.

*First*, it could potentially deprive Petitioners of the opportunity to submit en banc briefing. As noted above, FDA has injected a new venue argument into the case. And there are other issues unique to *RJRV*. Thus, this Court should order supplemental briefing if it takes *RJRV* en banc. But FDA asks the en banc Court to hear *RJRV*

alongside *Wages*, which will be argued in three weeks. If the Court does so, there would be little time for the *RJRV* parties to submit briefs and prepare for argument. Indeed, FDA is conspicuously silent on how briefing would proceed.

*Second*, FDA ignores that there could be different en banc courts. Because Senior Judge King was on the *RJRV* panel, she can join the en banc Court for that case. 5th Cir. R. 35.6. Not so for *Wages*, since she was not on that panel. That further muddies FDA's proposed procedural morass.

### G.    If the Court Grants Rehearing, It Should Leave the Stay in Place and Order but Defer Briefing

There are many reasons to deny FDA's petition. But if the Court nonetheless grants it, the Court should (i) make clear that the stay remains in place pending a decision from the en banc Court, (ii) order supplemental briefing and oral argument, and (iii) defer that briefing and argument pending the decision in *Wages*.

*First*, because FDA's request is so unusual, it is unclear whether granting FDA's petition would automatically vacate the stay. Normally, granting an en banc petition vacates the panel opinion, but that is when a merits decision has issued. 5th Cir. R. 41.3 ("Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion *and judgment*" (emphasis added)). Here, FDA is seeking rehearing of an interim stay decision, which this Court admonishes is not subject to rehearing. Thus, if the Court grants rehearing, it should make clear that the stay remains in place. Alternatively, the full Court should administratively stay FDA's denial order.

FDA has not asked the full Court to vacate the stay at this time—that is, simultaneously with granting en banc review. Moreover, since the *RJRV* Petitioners are entitled to a stay, as the panel unanimously concluded, the Court should not vacate the stay. And because the stay in *Wages* remains in place even though that case will be reheard, it is only fair that the *RJRV* stay remain in place too.

*Second,* given the unique issues in *RJRV*, the Court should order supplemental briefing and hold argument.

*Third*, assuming the stay continues, the Court should defer briefing and argument in *RJRV*. Considering *RJRV* alongside *Wages* would add issues that are immaterial to *Wages* and warrant separate briefing and argument—with the May 16 argument looming. There is no need to thrust the parties and the Court into such hurried proceedings.

Alternatively, if the Court grants FDA's petition and does not defer consideration, the Court should reschedule the *Wages* argument so both sides can brief the issues and the *RJRV* Petitioners can participate fully in the argument.

## CONCLUSION

The Court should deny FDA's petition.

Dated: April 27, 2023

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Christian G. Vergonis
Ryan J. Watson
Andrew J. M. Bentz
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel: 202-879-3939
Fax: 202-626-1700
njfrancisco@jonesday.com
cvergonis@jonesday.com
rwatson@jonesday.com
abentz@jonesday.com

*Counsel for Petitioners*

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that on this date, the foregoing document was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

I further certify that this document complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,898 words. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in 14-point Garamond, a proportionally spaced typeface.

And I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: April 27, 2023                      */s/ Noel J. Francisco*

                                    Noel J. Francisco

                                    *Counsel for Petitioners*